Ruffin, C. J.
 

 The Court is of opinion, that the decretal order is erroneous and must be reversed. Upon the reading of the bill, by itself, it is difficult to conjecture on what ground an injunction could have been granted. The bill places the plaintiff’s right to relief on three grounds: namely, that there were taxes in arrear, at the time he purchased, which form a lien on the land, that the defendants ought to discharge : that on one of the four lots, which he purchased, the Clerk and Master represented at the sale, that “ there was a valuable mill-site.” and that, in consequence thereof, the plaintiff was induced to give more for that parcel, than, otherwise, he would: And that the plaintiff had not a good title, because he had been advised, that, under the will of his son, the estate was liable, in the hands of the plaintiff, for Carleton Walker’s debts. These are the allegations of the bill, and the prayer is for an injunction against the judgments and unpaid notes, (amounting together to about $4,500, and being nearly three fourths of the purchase money) and that the defendants “ may come to a full settlement” with the plaintiff.
 

 The first two grounds, if they had been properly stated, are such as only entitle the plaintiff to compensation, and not to rescind the contract. But to entitle the plaintiff to an injunction, so as to give him the compensation by way of deduction from the purchase money, he must state in the bill, the amount of his loss, and some probable
 
 *62
 
 estimate of the deduction that will be a reasonable compensation. He says there were taxes due on the land ; but, because twenty or fifty dollars were in arrear, the defendants are not to be kept out of their whole purchase money. Indeed, unless the bill states the sum due for taxes or gives some excuse for not doing so, it cannot be assumed, that more than a nominal sum was behind. So, with respect to the mill-seat, the statements are equally vague. There is no pretence that the mill was the principal object of the plaintiff’s purchase of that lot, even, on which he says he thought it was. Nor is it- alleged, that the other lots are so complicated with that, as to have their value affected. It was merely an incidental advantage, appurtenant to a particular lot, which, in his opinion, enhanced its value ; and, therefore, according to the common learning, he could not be compelled to complete the purchase without a deduction for the difference in value. It is clear, then, that the plaintiff cannot ask to have the contracts for the other lots touched, nor, indeed. that for the particular lot, except to have a reasonable deduction from the purchase money for it, by way of compensation. Yet he has sought and obtained an injunction as to the residue of the purchase money, and that without setting any value upon a seat for a mill there, or giving any estimate whatever of the diminution in value from the loss of it — saying, merely, that the Master represented, that there, was a “ valuable” mill-site, and that he was induced to give “ more” for that parcel than he would have done without it. If the party will not venture to state, on his oath, the extent of his loss, the Court cannot presume it to be to that extent, which makes it proper to restrain the vendor from calling for any part of his debt, If it were otherwise, debtors would be encouraged, instead of seeking compensation for the real injury, to make these loose statements in order to prolong the injunction, until the damage could be ascertained by enquiring after the hearing ; and the delays
 
 *63
 
 from injunctions would become yet more reproachful than they are at present. But, if these observations be, as they are believed to be, generally correct, they apply with peculiar force to the present case ; in which the plaintiff does not ask, for these reasons and that of the defect of title super-added, to have his purchases rescinded, but seeks merely an injunction and “ a settlement.” The plaintiff is in the enjoyment of the estates under his purchase and the order of confirmation, and without offering to give up the contracts or the possession, or saying what kind of a settlement he desires, he prays an injunction for about three fourths of the purchase money, for an indefinite period, upon the two grounds, that a trivial sum was due for taxes at the sale, and that he bid for one of the lots a trivial amount “more” than he would have doné, because of something that was said about a seat for a mill on it. Besides, the plaintiff does not allege, that there was not the mill seat, according to the representation which he charges. But he says, it has been lost by the building of another mill below it, by another person, who, as the plaintiff believes, had the legal right, “ either by deed, grant, or prescription.” Now, if a mill be built by any person, so as to injure another’s property, he must make just compensation ; and, therefore, in that point of view, a plain legal remedy is open to the plaintiff. Then, as to the statement, that the plaintiff is informed and believes, that the other mill was erected by one who had right in one of the ways mentioned, by deed, grant, or prescription, it is to be observed, as has been done, as to the other parts of the bill, that it is entirely too vague and conjectural to found a decree on. A title ought to be stated in the pleadings. Otherwise, the defendants cannot answer to the plaiutiff’s grounds of relief, and the decree is necessarily founded on proofs beyond the allegations. If the other person set up a paramount right to erect a mill, the plaintiff ought to have stated his title before he can claim relief on the mere ground of that title,
 
 *64
 
 without any statement that it is not known to him, or was known to the defendants, when they sold, or is even now known to them.
 

 We come then to the third ground, which is a defect of title by reason of the encumbrance of Carleton Walker’s debts. The bill does not allege any fraud on the Court in obtaining the decree for the sale, that the title of the parties was not truly shewn to the Court as claimed. Indeed the plaintiff was a necessary party to that suit, and therefore would not undertake to prefer such a charge. It might then be a question of no slight difficulty in the way of the plaintiff, whether, after the Court of Equity for Cumberland bad decided on the question of title arising upon the construction of the will and by descent, and had confirmed the sale of that title to the plaintiff, he could sustain a bill in another Court of Equity to have the title declared defective, and on that ground be relieved to any extent from his contract. The solution of that question favourably to the plaintiff is not rendered the easier, when it is considered that the Clerk and Master is made a party, and that
 
 it is
 
 placing’ him under the opposing obligations of obedience to the order of the Court, of which he is the officer, to collect the money, and of the other Court not to collect any part of it. But the Court does not enter into that question, since it is not necessary to the decision of this case. For the Court is clearly of opinion, that the plaintiff has a good title. The only defect, sugges-ted in the bill, respects the, interest of Carleton Walker, and the encumbrance of his debts as appearing upon the face of the will, of which a copy is set out in the bill. In the events which have occurred, no estate vested in that person or has become subject to his debts. The land is given to the trustees in
 
 trust
 
 for the wife to- her separate use,
 
 until
 
 Carleton Walker should pay his debts then existing, and
 
 then
 
 in trust to convey it to the husband. The case is, therefore, directly within that of
 
 Bank of the State
 
 v.
 
 Forney, 2
 
 Ired. Eq. 181,
 
 *65
 
 The bill charges that he died very much in debt and without any property, unless he had a title under his son’s will. It does not allege that any of the debts were contracted after the making of the will, or that he paid any part of those existing. It must be understood, then, that the debts he owed when he died were the same debts, which are mentioned in the will, and the payment of them is made a condition precedent to the arising of the trust for him ; and, as he is now dead without property, that condition can never be performed ; and the case just mentioned excludes his creditors. It might, perhaps, be a question, whether Mrs. Walker, under those circumstances,' took the fee or only took a life estate, and so, the reversion, not being disposed of by the will, descended to her children, as the heirs of their half-brother. But it is not material to the plaintiff, what the rights of those persons were ; since the fee was certainly among them, and they were all parties to the cause, and the decree and conveyance under it will, under the statute, pass to the plaintiff all the interest belonging to all or either of them. The plaintiff then, gets the absolute title to the land, however the other parties may be entitled to the money. If, however, it had been true, that Carleton Walker had a vested interest liable to his debts, the plaintiff is now in no danger, and would hold the land exempt from those debts. Under the circumstances, and since the bill docs not charge any particular debt to have been contracted after Carleton Walker’s insolvency, or to have fallen due after his death, it is a reasonable presumption, that his only debts were those which existed in 1824, and that they were due before 1840; and, therefore, as Carle» ton Walker died in 1840, and no proceeding by any creditor is suggested, it may be safely assumed, that every creditor of his is now barred by the Act of 1715.
 

 Therefore, upon the bill itself, there does not appear any just ground for relieving the plaintiff from the con
 
 *66
 
 tract, if he had so prayed; nor for exempting him from the payment of the residue of the purchase money, or, as far as he enables the Court to see, of any such part of it, as will justify the holding up the injunction for any sum in particular, much less for the whole that remains due.
 

 If there were, indeed, any doubt upon the bill, the answers are sufficient to remove it; as they deny that any taxes were due, to the knowledge of the defendants, and deny any such representations respecting the mill, and affirm, that, when the report was made and confirmed, the plaintiff was fully informed of the purpose of another person to build a mill, and likewise that he knew the state of the title, when he purchased and long before, and that the decree and sale were made by his consent. It is said, however, that one of the defendants, Mrs. Byrne, has not answered, and that it is against the course of the Court to dissolve an injunction, upon the answers of only a part of the defendants. It is true, that is the usual course; and it is for that reason, amongst others, that the case has been so much considered upon the bill alone. But it is plain that the rule cannot control the Court in this case. For, in the first place, the bill does not make a case for an injunction, as has been shewn. Next, the bill charges nothing to have been done by this lady, except that she was a party to the suit for sale and partition (about which there is no dispute) and does not charge any of the matters to be particularly within her knowledge ; and those persons, who had any agency in the sale, or within whose peculiar knowledge any of the facts'are charged to be, have answered and fully denied them. Under such circumstances the omission of a defendant, in the situation of this lady, to answer, does not preclude a motion from the others for a dissolution — especially, when the plaintiff did not serve her with process, or, as far as appears, take any other proper steps to bring her into Court.
 

 
 *67
 
 The Court is therefore of opinion, that the order was erroneous, and that the injunction should have been dissolved with costs. The plaintiff must also pay the costs of this Court.
 

 Per Curiam.
 

 Ordered to be certified accordingly.